# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**WALTER PETTWAY**                                            **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 5:08cv283KS-MTP**

**THE PRUDENTIAL INSURANCE**
**COMPANY OF AMERICA**                                         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court for disposition as a review of an administrative decision of an ERISA claim pursuant to Cross-Motions for Summary Judgment **[#s 11 & 13]** filed by the parties. Reciprocal briefing by the parties has been completed and a Joint Stipulation of the Administrative Record has been filed. After a careful review of the administrative record, the briefs of counsel and the legal authorities cited, the court finds as follows;

## FACTUAL BACKGROUND

The plaintiff, Walter Pettway, lives in Vicksburg, Mississippi and was employed by ADP as a Principal Consultant beginning in 1994. His job required him to travel throughout the Continental United States to assist large corporations with computer operations. The plaintiff is a high school graduate who completed two years at Hinds Community College with an emphasis in electronic data processing. The plaintiff's employer provided a long term disability insurance policy issued by defendant

Prudential as a part of his employment package.

In the late 1970s the plaintiff had undergone a cervical fusion at the C6-7 level and another fusion at the C5-6 level around 1999. Apparently, he suffered a severe fall in the summer of 2002 and began to suffer problems with his neck, low back, left arm, right and left leg weakness and numbness, and numbness in his fingers. On October 18, 2002, he began treatment with Dr. Ashraf Ragab at University Orthopaedics Associates in Jackson, Mississippi. Dr. Ragab is an associate professor at the University Medical Center and a practicing Board Certified orthopaedic surgeon.

Dr. Ragab recommended and the plaintiff underwent a cervical discectomy and fusion from C3 to C5 with an allograft and placement of anterior instrumentation on January 21, 2003. The plaintiff related that he continued to suffer numbness in his left arm and difficulty swallowing. On June 24, 2003, Dr. Regab performed another surgical procedure in which the hardware that was installed at the plaintiff's original fusion site was removed. The plaintiff continued to complain of pain and numbness and on November 5, 2003, Dr. Ragab opined that the plaintiff's symptoms may be due to scarring from his previous injuries and surgeries.

On January 20, 2003, the plaintiff filed a claim for long term disability benefits due to problems he related to his neck and back and a long history with diabetes and high blood pressure. Along with his claim, an Attending Physician's Statement was submitted by Dr. Ashraf Ragab which indicated diagnoses of cervical spondylosis (disorder caused by abnormal wear on the cartilage and the cervical vertebrae with degeneration and mineral deposits in the cushions between the vertebrae) and herniated nucleus pulposus (slipped disc along spinal cord). Based on this information,

Prudential approved benefits effective on April 11, 2003, of approximately $5,615.50 per month.

Long-term disability benefits were paid until the plaintiff was notified on or about November 21, 2003 that they would cease December 1, 2003, because Prudential had determined that the plaintiff was no longer entitled to receive LTD benefits. Since benefits had been paid for less than twenty-four months under the Policy, at this time, the plaintiff was disabled if he was unable to perform the material and substantial duties of his regular occupation. The plaintiff appealed the termination of benefits in a letter dated November 25, 2003. Dr. Ragab furnished a letter on December 5, 2003, which stated that the plaintiff was "unable to perform the duties of any gainful occupation which he is reasonably fitted by education, training and experience."

During the appeal, Prudential scheduled an Independent Medical Exam by Dr. Thomas Cullom, a specialist in neurological surgery, on January 7, 2004. After his examination, Dr. Cullom concluded that the plaintiff was not capable of performing the duties of his current occupation. Thereafter, Prudential restored benefits on January 22, 2004.

In October 2003, Prudential required the plaintiff to seek Social Security Disability Benefits. After the denial of his initial claim, Prudential hired and paid a law firm to represent the plaintiff on his appeal to an Administrative Law Judge. Ultimately, the plaintiff was awarded total disability benefits by the ALJ on June 23, 2004. Prudential then required the plaintiff reimburse it for $23,283.00 in LTD benefits paid as a result of an offset provision in the Policy. The plaintiff complied with this requirement.

Pursuant to the terms of the Policy, Prudential continued to monitor the plaintiff's

claim and obtain information regarding his entitlement to benefits, and, at all times during the process, paid the plaintiff benefits under the Policy. As a part of this monitoring, Prudential had the plaintiff placed under surveillance on February 12 and 13, 2004; February 10 and 15, 2005; and on February 22, 2005. On none of these occasions were the private investigators successful in observing the plaintiff. The plaintiff was also placed under surveillance on May 23, 24, 25 and 26, 2005. Only on May 25 was the plaintiff observed. The video shows that the plaintiff took a small leather bag and a lunch bag out of a car and handed them to his granddaughter.

Prudential had surveillance conducted on May 2, 3 and 11, 2006. The report indicates that the plaintiff traveled in a pickup on one of these dates. However, it is unrefuted that the plaintiff was misidentified by the private investigator and in actuality, the plaintiff was not observed at all on any of these dates. The plaintiff was subjected to surveillance on October 26, 27 and 28, 2006, and no activity was recorded.

The last surveillance was conducted on November 15, 16, 17 and 18, 2007. On November 15, the plaintiff was observed walking down his driveway to get his mail. Later that day, he was seen taking his mother in-law and wife to a doctor's office. While they were in the doctor's office, the plaintiff drove through an ATM, went by his daughter's place of work, through a drive-through car wash and then back to the doctor's office where he waited in the car with the seat reclined. On November 16, the plaintiff drove to Jackson for his IME at the direction of Prudential.

On November 17, the plaintiff was seen walking down his drive to get his mail. On November 18, the plaintiff was seen driving to a mall where he picked up Chinese take-out food and went to a friend's house to watch football. Later that evening, he took

4

his granddaughter to a movie in Clinton.

As part of its review and monitoring of the plaintiff's claim, Prudential scheduled an independent medical examination with Dr. Jo Lynn Polk, Board Certified in Physical Medicine and Rehabilitation, which was conducted on November 16, 2007. Dr. Polk performed a physical examination of the plaintiff and also reviewed his prior medical records. She also observed a surveillance video made of the plaintiff on May 25, 2005, which showed the plaintiff driving to a car rental location, placing two bags into a Ford Explorer and driving approximately one hour to Delhi, Louisiana, where no further activity was observed.[1] The court notes that this video surveillance was conducted two and one-half years before Dr. Polk's examination. After reviewing this surveillance, Dr. Polk concluded that the plaintiff's "self-reported functionality is not consistent with the activities noted on the surveillance."

Dr. Polk also noted a number of other alleged inconsistencies in her examination and the plaintiff's report of symptoms: "(1) although he claims his left hand is weak, there was no atrophy of his left hand muscles; (2) although he says he has numbness in his left hand, there was only a slight sensory deficit [which] would impart minimal impaired function of the left hand; (3) although he says he can sit for only 30 minutes at a time, he sat on the examining room table for one hour during my interview; and (4) although he says he needs assistance standing and wiping himself after bowel movements, [d]uring my evaluation he demonstrated independence with standing after

---

[1] The plaintiff refutes that he drove West that day and the defendant has not denied this. As previously seen, the surveillance personnel were not that adept in identifying or monitoring the plaintiff accurately.

5

sitting[2] and had adequate right shoulder internal rotation to wipe himself after bowel elimination."

Dr. Polk concluded that the plaintiff's self reported level of chronic pain was inconsistent with her examination, and disagreed with Dr. Ragab's diagnosis of chronic lumbar pain and the findings of a cervical spine CT scan in June of 2004, which she opined showed only mild degenerative changes. Accordingly, Dr. Polk concluded that the plaintiff "did manifest symptom magnification" and that "it is my opinion that Mr. Pettway is physically capable of performing sustainable work."

After scheduling the IME with Dr. Polk, Prudential scheduled surveillance, which was conducted from November 15 through 18, 2007. The surveillance video showed the plaintiff engaged in what the defendant alleges is "significant activity without any visible indication of impairment." On the surveillance video, and as detailed in the investigation notes, the plaintiff is shown doing the following: (1) walking down the driveway to the mailbox, getting mail and returning back to the house; (2) driving an elderly woman (mother in-law) and his wife to the Vicksburg Clinic, assisting the elderly woman out of the car and into a wheelchair; (3) driving to the IME appointment with Dr. Polk and walking with his walker; (4) driving to the mall, walking into the mall, ordering food, and walking back to his car without the aid of a walker; (5) driving to a residence in Vicksburg, (6) driving to a McDonald's and (7) driving to a movie theater in Clinton with his granddaughter and watching a movie.

Dr. Polk's IME report and the surveillance video was reviewed on December 10,

---

[2] As to the standing without assistance, Dr. Polk is repeating only what a nurse in the examination room reported to her, apparently, she did not observe this personally.

6

2007 by Dr. Richard Day, an in-house physician with Prudential.  Dr. Day concluded, "I would agree with the conclusion Dr. Polk noted that the claimant has sustainable work capacity at least at a sedentary level. There were several inconsistencies in the physical examination by Dr. Polk. There is [sic] also inconsistencies in his report of only being able to drive 8 miles, and on the days of the surveillance he was seen driving 41 and 55 miles."

Based on the opinions by Dr. Polk and Dr. Day, Prudential requested an employability assessment, which was performed on December 1, 2007.  The assessment determined that there were a number of occupations for which the plaintiff was qualified and which paid a wage in excess of sixty percent of pre-disability wage, including: (1) quality assurance analyst; (2) software engineer; (3) computer programmer; (4) computer and information systems manager; (5) computer systems analyst; and (6) human resources information systems manager.  After review of the above information and the claim file, Prudential terminated benefits on December 14, 2007 and notified the plaintiff of its decision by letter.

The plaintiff appealed Prudential's decision on May 12, 2008.  As part of the appeal, the plaintiff's counsel submitted documents from other physicians who had previously examined the plaintiff, including a February 8, 2008, letter from Dr. Ragab (treating physician); an April 18, 2008, letter from Dr. Cullom (previous Prudential IME); and an April 28, 2008 letter from Dr. Bouldin (treating physician). All three of these physicians disagreed with Prudential's conclusion that the plaintiff was capable of returning to work.  However, the defendant asserts that none of these physicians indicated that they had reviewed the surveillance, and thus discounts their opinions to

7

the point of ignoring them.

As part of the appeal, Prudential requested and obtained an independent peer review from Dr. Richard Avioli, Board Certified in Orthopaedic Surgery. Dr. Avioli reviewed the medical records on file, including the new information submitted by the plaintiff's counsel. With regard to Dr. Ragab's letter, Dr. Avioli noted that the plaintiff had not seen Dr. Ragab since January 18, 2006, and there were no further documented visits for review. With regard to Dr. Cullom and Dr. Bouldin, Dr. Avioli only noted that there was no indication that these physicians had reviewed the surveillance video taken in November of 2007. Dr. Avioli also disagreed with Dr. Bouldin's opinion that the plaintiff had significant impairment because of pain in his arms and hands as well as his left leg, because "there is no medical data to support this opinion, and, in fact, the surveillance videos in November 2007 suggest that the claimant is capable of performing most activities of daily living."

Dr. Avioli also reviewed Dr. Polk's report and concluded that "the restrictions and limitations as noted by Dr. Polk in her IME are appropriate." Further, he agreed that the plaintiff's self-reported symptoms were inconsistent with diagnostic testing and his observed activities: "The claimant's self-reported symptoms/pain are not supported by the results of cervical or lumbar MRI as noted in Dr. Cullom's letters. The claimant's self-reported symptoms are also inconsistent with the activities that he was observed to be capable of performing on the surveillance videos performed in November 2007."

After completing the review on appeal, Prudential upheld its decision on June 11, 2008, in a letter sent to the plaintiff which reviewed his medical history, Dr. Polk's IME, the medical review by Dr. Avioli, the vocational assessment, and the surveillance

footage. Prudential concluded in the letter, "Mr. Pettway has the functional capacity to perform the material and substantial duties of alternate, gainful occupations.[3] As such, the decision to terminate Mr. Pettway's claim effective January 1, 2008 was appropriate and is being upheld on first reconsideration."

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

---

[3] After receiving LTD benefits for twenty-four months, the Policy contained a provision which defined disability more broadly than "own occupation." Specifically, the plaintiff was not disabled within the meaning of the Policy if he had the "functional capacity to perform the material and substantial duties of alternate, gainful occupations."

9

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ERISA PLAN**

The parties all acknowledge that this action is governed by ERISA. The Act provides, "this chapter shall supersede any and all State laws insofar as they may now

11

or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a). The Supreme Court has held that this language is "deliberately expansive," and is designed to make regulation of employee benefit plans an exclusively federal concern. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). "[W]hen beneficiaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in 29 U.S.C. § 1132(a)(1)(B)." *Hansen v. Continental Ins. Co.,* 940 F.2d. 971, 979 (5th Cir.1991)(quoting, *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir. 1989)). The plaintiff is seeking recovery for damages which are not limited to those remedies available under ERISA, specifically, benefits and attorney fees. Thus, all claims outside the perimeters of benefits and attorney fees are preempted and subject to dismissal.

## **REVIEW OF ADMINISTRATIVE DECISION**

A district court's review of a plan administrator's benefit determination is governed by the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and the Fifth Circuit's subsequent decision in *Pierre v. Connecticut General Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991) *(cert. denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991)). *See Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

In *Firestone*, the Supreme Court held that judicial review of the administrator's determination of plan terms and eligibility for benefits provisions was to be *de novo* unless the plan expressly conferred upon the plan administrator discretionary authority in making such determinations. If discretion were granted, the "abuse of discretion"

standard would apply instead.  *See id.*  However, in *Pierre*, the Fifth Circuit held that "even where the plan does not expressly give the administrator discretionary authority, 'for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard.' 932 F.2d at 1562; *see also Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-01 (5th Cir.1993); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597-98 (5th Cir.1994)." *Id.*

Therefore, in this circuit, a plan administrator's factual determinations are always reviewed for abuse of discretion while its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless the administrator is expressly granted discretionary authority in that respect.  If there is such a grant of discretionary authority, then review of those decisions as well is for abuse of discretion. In this case, Prudential was granted such discretionary authority, thus, review will be under an abuse of discretions standard.

However, Prudential's discretion to make benefit determinations is not absolute for when there is an apparent conflict of interest between the administrator's fiduciary obligations to the Plan participants and the profit motive of the Company, the deference due the decision may be reduced in proportion to the conflict.  *See Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)(*en banc*)("The existence of a conflict is a factor to be considered in determining whether the administrator abused his discretion in denying a claim.").  Thus, where the Plan fiduciary is also the one responsible for making the payment of benefits, the court should proceed with caution to insure that the fiduciary is not acting under a conflict of interest detrimental to the beneficiary.  Of course, there is no presumption in *Vega* that a conflict exists *ipso facto*

13

merely because the plan fiduciary both insures the plan and administers it. *See MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 479 n. 8 (5th Cir. 2003). An ERISA plaintiff must come forward with evidence that a conflict actually exists in order to diminish the discretion due such decisions. *See id.*

In order for the court to affirm the administrator's claims decision, the court must conclude that the decision was supported by "substantial evidence." *Ellis v. Liberty Life Assur. Co. Of Boston*, 394 F.3d 262, 273 (5th Cir. 2005). Further

> The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability. Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.

*Id.* at 273. (citing *Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir.1999) ("When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence.")); and (citing *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir.1986)).

## **ANALYSIS**

After carefully reviewing all of the evidence presented in the administrative record, the court concludes that Prudential acted arbitrarily and capriciously in making the factual determination that the plaintiff's LTD benefits should be terminated. There

is not substantial evidence to support the administrator's decision and, therefore, there was an abuse of discretion in determining that the plaintiff's LTD benefits should be terminated.

Prudential totally ignored the unrefuted evidence from the plaintiff's treating physicians and from the original doctor to whom they sent the plaintiff for an IME. They chose, instead, to rely on the report of an IME doctor, Dr. Polk, who saw the plaintiff on one occasion for less than an hour who herself relied on a video surveillance more than two years old to support her findings. Additionally, Prudential's occupational review or employment assessment and independent peer review relied on Dr. Polk's analysis almost exclusively, giving no credence to the treating physicians. Prudential never informed any of these doctors that they had attempted to conduct surveillance on the plaintiff on more than twenty occasions and only were successful in securing observations of the minuscule activities described above. None of the activities observed equate to the requirements of the vocational employment assessment performed by Prudential nor the training and education of the plaintiff in securing viable employment. Terminating the plaintiff's LTD benefits on the record before this court was arbitrary and capricious.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff's Motion for Summary Judgment **[#11]** is granted to the extent that the court finds that he is entitled to a reinstatement of LTD benefits consistent with the terms of the Policy and an award of attorney fees.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant had properly calculated the benefits to which the plaintiff was entitled and the plaintiff's claim for

additional benefits is denied.

IT IS FURTHER ORDERED AND ADJUDGED that the defendant's motion for summary judgment **[#13]** is granted to the extent that all of the plaintiff's claims except those for benefits and attorney fees are preempted and dismissed; the motion is denied as to the plaintiff's claims for benefits and attorney fees.

IT IS FURTHER ORDERED AND ADJUDGED that the plaintiff is entitled to an award of attorney fees and costs for the prosecution of this action and he shall, within ten days of this Order furnish a detailed bill of costs and itemization of expenses and attorney fees to support a final judgment; that the defendant shall respond to the bill of costs and itemization of expenses and attorney fees, if it so chooses, within twenty days of this order at which time the court will enter a final judgment in accordance with Rule 58, Fed. R. Civ. P.

SO ORDERED AND ADJUDGED this the 11th day of September, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE